UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Cesar Perez Ramirez,<br><br>     Plaintiff,<br><br>v.<br><br>Odell Pizza, Inc. *et al.*,<br><br>     Defendants. | Civil No. 3:23-CV-00809-TOF<br><br><br>July 3, 2024 |

**ORDER GRANTING JOINT MOTION
TO APPROVE FLSA SETTLEMENT [ECF No. 30] AND DISMISSING CASE**

**I.   BACKGROUND**

The plaintiff, Cesar Perez Ramirez, and the defendants, Odell Pizza Inc., and Bruno DiFabio, have reached an agreement to settle the plaintiff's federal Fair Labor Standards Act ("FLSA") claims, 29 U.S.C. §§ 201 et seq. As discussed in more detail below, with-prejudice settlements of FLSA claims require court approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199, 206 (2d Cir. 2015). Seeking such approval, the parties in this case have filed a Joint Motion for an order approving their settlement agreement. (Jt. Mot. to Approve FLSA Settlement, ECF No. 30) (hereinafter "Motion"). For the reasons that follow, the Motion is granted.

The plaintiff in this case worked for the defendant restaurant as a cook from December 12, 2021 to December 18, 2022. (Motion, ECF No. 30 at 2.) In his complaint, the plaintiff alleges that the other defendant, Bruno DiFabio, controlled the conditions of his employment at Odell Pizza, and ultimately terminated his employment. (Pl.'s Compl., ECF No. 1 at 2.) From the start of his employment until December 18, 2022, plaintiff claims he regularly worked six, twelve hour

shifts, totaling seventy-two hours a week. *Id*. at 3. He states that during this time, he was never paid overtime wages – that is, any hours worked over forty hours per week. Further, the plaintiff claims that he is not exempt from receiving overtime wages under either FLSA or the Connecticut Minimum Wage Act ("CMWA"). (Motion, ECF No. 30 at 2.) The plaintiff alleges that he had "no supervisory abilities", "no hire or fire authority, or any other duties or responsibilities" that would disqualify him from receiving overtime wages. *Id*. Therefore, he sought to recover his unpaid wages under both the FLSA and the CMWA, in addition to liquidated damages, pre- and post-judgment interest, and attorney fees and costs. *Id*.

In response, the defendants disputed the majority of the plaintiff's claims including the hours worked, the plaintiff's eligibility to collect overtime wages under relevant law, and the applicability of liquidated damages.

On April 18, 2024, I conducted a settlement conference with both parties in this action. After almost three hours of negotiations, the parties agreed on a settlement of $20,000 to be paid by the defendant in five installments. Of this, $6,666.67 was allotted for attorney fees, in addition to $564.40 worth of incurred costs for prosecuting the action. In return for payment, the plaintiff agreed to release any and all claims for overtime compensation, and any other benefits arising out of his work for the defendants or the facts that gave rise to his claim under the FLSA. (Settlement Agreement. ECF No. 30-1 at 5.) The agreement provides that any claims or rights that cannot be waived by law are exempted from the release. *Id*.

II.     **DISCUSSION**

   A.     **Applicable Legal Standards**

In the Second Circuit, with-prejudice settlements of FLSA claims must be approved by a court. The FLSA is a "uniquely protective statute," designed to "prevent abuses by unscrupulous

employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (citing *Brooklyn Savings Bank*, 324 U.S. at 706–07, 65 S. Ct. 895)). Many FLSA cases involve low wage employees who, "even when represented, [may] face extenuating economic and social circumstances." *Id*. at 205. This dynamic may make them "more susceptible to coercion or more likely to accept unreasonable and discounted settlement offers." *Id*. As a result, parties cannot stipulate to a dismissal of FLSA claims with prejudice under Fed. R. Civ. P. 41, "absent the approval of the district court or the Department of Labor." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 599 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 200). Courts in this Circuit therefore routinely review FLSA settlements for fairness and will approve the stipulation only when it is "deemed fair and reasonable." *Allard v. Round Robin Operations, LLC*, No. 3:19-cv-01541 (JAM) (SDV), 2021 WL 6337743, at *1 (D. Conn. July 13, 2021) (citing *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)) (internal quotation marks omitted).

In making their fairness determinations, courts within the Second Circuit typically reference the factors outlined in the seminal *Wolinsky* case. In that case, the court listed five non-exhaustive factors for courts to consider when "determining whether the proposed settlement is fair and reasonable." *Wolinsky,* 900 F. Supp. 2d at *335. These factors include: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risk faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Id*. (internal quotation marks omitted).

### B.     Application of Wolinsky Factors to This Case

The first *Wolinsky* factor – the range of possible recovery – weighs in favor of approval. The parties in this case agreed to a settlement of $20,000, to be paid by the defendant over several installments. (Motion, ECF No. 30 at 4.) Of that amount, the plaintiff would receive $12,768.93, with the remainder going to his attorney. Since the plaintiff calculated his lost wages at a total of $8,373.74, the proposed settlement accounts for "153% [of] Plaintiff's highest total alleged unpaid overtime wages, without accounting for liquidated damages" and "76.25% of Plaintiff's highest possible recovery inclusive of liquidated damages." *Id*. Courts in this Circuit have routinely approved FLSA settlements that contemplate a much lower percentage of potential recovery for the plaintiff. *See, e.g., Khan v. Yonkers Auto Ctr., Inc.*, No. 19-CV-5581 (KMK), 2022 WL 2866459, at *3 (S.D.N.Y. July 21, 2022) (approving FLSA settlement representing 28% of total possible recovery and 79% of base damages); *Mendoza v. Conn. Closet & Shelf, LLC,* No. 20-cv-1449 (KAD), 2021 WL 6497235, at *3 (D. Conn. Feb. 22, 2021) (approving settlement representing 54% of possible recovery); *Pascual v. Three Diamond Diner Corp*., No. 21-CV-3333 (KMK), 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) (approving settlement representing 29% of plaintiff's total alleged damages).

The second *Wolinsky* factor – the extent to which the settlement will allow the parties to avoid the burdens of establishing their claims and defenses – likewise supports approval. As the parties noted in their Motion, settling the case early allowed the parties to conserve resources that would have otherwise been spent on litigation. This includes costly depositions, dispositive motions, and a trial, all of which would have to be resolved before the plaintiff could recover anything.

The third *Wolinsky* factor – the seriousness of the litigation risk faced by the parties – similarly supports approval of the settlement agreement. The plaintiff alleges that he was not paid for any overtime wages during his employment with the defendant. But the defendant rejects this claim and disputes the amount of unpaid hours. The defendants produced only partial time records, and those records do not conclusively prove either party's claims. Thus, plaintiff's ability to prove his allegations at trial, establishing both (1) the hours worked and (2) the defendant's liability, would largely rest on his own testimony. The trier of fact might not believe him, and he therefore faced litigation risk.

The fourth and fifth *Wolinsky* factors also weigh in favor of approval. The fourth factor considers whether the settlement agreement was the product of arm's length bargaining between experienced counsel. Having personally mediated the case, I find that it was. The mediation was attended by the plaintiff himself, in addition to counsel for both parties. At several points during the mediation, I spoke to Mr. Ramirez directly to both assure his understanding of the settlement process and communicate each offer as it was given. Both attorneys fought zealously for their client's interests and after almost three hours of negotiating, a settlement was reached. (Minute Entry, ECF No. 24 (recording 2-hour 45-minute conference on Apr. 18, 2024.)) Given this, I find that the parties' settlement agreement is the product of arm's-length negotiation between competent counsel. I also find that it was not the product of fraud or collusion -- the final factor in the *Wolinsky* analysis. *See Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 474 (S.D.N.Y. 2013).

### C. Other Factors

It should be noted that other factors, not expressly outlined in *Wolinsky*, may preclude approval of an FLSA settlement. For instance, a settlement agreement that seeks a "an overbroad release . . . waiv[ing] practically any possible claim against the defendants" including claims with

5

"no relationship" to the wage and hour issues in the case, will not ordinarily garner court approval. *Cheeks*, 796 F.3d at *206.  Similarly, settlement agreements with overreaching confidentiality and non-disparagement clauses will also not be deemed fair and reasonable by the court.  *E.g., Luna v. J.S. Held LLC*, No. 2:21-CV-03072-JMW, 2023 WL 2214012, at *4 (E.D.N.Y. Feb. 24, 2023) (denying approval of settlement agreement when non-disparagement clause was found to be overbroad); *Doe v. Solera Cap. LLC*, No. 18 CIV. 1769 (ER), 2021 WL 568806, at *2-3 (S.D.N.Y. Jan. 20, 2021) (denying approval of FLSA settlement agreement containing an overly broad confidentiality provision and non-disparagement clause).  In this case, however, the settlement agreement does not overreach with respect to these issues.  The release article does not attempt a "global release of all claims," however unrelated to the wage-and-hour dispute, and it specifically excludes from its scope "any claim or right that cannot be waived by law[.]"  (ECF No. 30-1, at 5); *see also Axelrod v. PosiGen CT LLC*, No. 3:22-cv-440 (JCH) (TOF), 2022 WL 18775907, at *5 (D. Conn. Nov. 7, 2022), *report and recommendation approved and adopted*, slip op. (D. Conn. Dec. 1, 2022) (recommending approval of settlement agreement with similar release article). Moreover, the settlement agreement does not have confidentiality or non-disparagement clauses, and the plaintiff's "right to file a charge with or participate in an investigation conducted by government agencies" is expressly preserved.  (ECF No. 30-1 at 5.)

   **D.** **Attorneys' Fees**

  Finally, in reviewing an FLSA settlement, the Court must also assess the attorney fee component.  "In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016). In this case, Mr. Ramirez's counsel seeks $6,666.67, or 33.3% of the settlement.  (Motion, ECF 30 at 5.)  Courts have routinely found that attorney fees representing one-third of the total

6

settlement amount are reasonable. *E.g., Labalme v. Oasis Charger Corp.*, No. 3:20-CV-01223 (SALM), 2021 WL 6498733, at *3 (D. Conn. Aug. 20, 2021) (finding the attorney fees reasonable when it represented approximately one-third of the total settlement and noting that this breakdown "is generally called for by many standard contingency fee arrangements").

### III. CONCLUSION

For the foregoing reasons, the Parties' Joint Motion for Settlement Approval (ECF No. 30), is granted, as the proposed settlement is fair and reasonable. The Clerk of the Court is respectfully directed to close the case administratively, without prejudice to reopening by any party on or before August 5, 2024. If the parties wish to file a stipulation of dismissal, they may do so on or before August 5, 2024. The dates set forth in this paragraph may be extended for good cause, upon a motion filed in accordance with Local Rule 7(b). This dismissal will automatically convert to one with prejudice without further order of the Court if no motion to reopen is filed by August 5, 2024.

                                                */s/ Thomas O. Farrish*
                                                Hon. Thomas O. Farrish
                                                United States Magistrate Judge